The Honorable Brent Haltom Prosecuting Attorney Eighth Judicial District South Room 6, Miller County Courthouse Texarkana, AR 71854
Dear Mr. Haltom:
I am writing in response to Deputy Prosecuting Attorney Carlton D. Jones's request for an opinion concerning a former district judge's request for retirement benefits. Mr. Jones states that the former judge believes A.C.A. § 24-8-307 governs his retirement but he has been told that the Arkansas District Judge Retirement System (ADJRS) cannot honor his request because the city and county governing bodies have not acted under subsection24-8-307 to approve his retirement. Mr. Jones further states that he believes the facts indicate this individual would otherwise qualify for benefits under this subsection. The following questions are presented for my opinion:
 1. Does the state legislature have the power or authority to enact a law which delegates to another political entity discretion to enact or refuse to enact a provision of a law enacted by the state legislature?
 2. Is this Judge eligible for benefits through the District Judges Retirement plan based on the provisions of Arkansas Code Annotated § 24-8-307(h)(1) or (i)(1)?
RESPONSE
Although your first question is posed in the abstract, I assume from the context of your request that you are referring to the law that requires city and county governing body "approval" of retirement benefits for certain former municipal judges. In my opinion, the answer to your question is "yes" regarding this delegation of approval authority. The answer to your second question is "no," in my opinion, in the absence of the city and county governing bodies' approval of his eligibility for benefits, unless perhaps it can be established that the city and county acted arbitrarily in exercising their apparent discretion under A.C.A. § 24-8-307 to withhold such approval. I have no information upon which to adjudge the exercise of this discretion, and must note in any event that this is a question of fact falling outside the scope of an opinion from this office.
Question 1 — Does the state legislature have the power orauthority to enact a law which delegates to another politicalentity discretion to enact or refuse to enact a provision of alaw enacted by the state legislature?
I assume that the referenced "law" is A.C.A. § 24-8-307, and specifically the language therein concerning "the approval of a majority of the city council . . . and of the county quorum court" regarding the retirement of a municipal judge. See,e.g., A.C.A. § 24-8-307(h)(1) and (i)(1) (Supp. 2005).[1]
You state that the former judge believes the latter subsections govern his retirement.[2] As you have indicated, these subsections appear to vest discretion in the city and county governing bodies to approve retirement benefits for the covered persons. Subsection 24-8-307(i)(1) provides as follows:
 Upon the approval of a majority of the city council or board of directors of a city of the first class or a city of the second class and the approval of the quorum court of the county, if county funds are used to partially pay the salary of the judge of the municipal court, any person who at age fifty (50) has sixteen (16) years of service, with not less than eight (8) years as municipal judge and at least six (6) years as a prosecuting attorney or deputy prosecuting attorney and two (2) years with any state agency for a total of sixteen (16) years, shall be eligible to receive retirement benefits provided by this subchapter.
A.C.A. § 24-8-307(i)(1) (Supp. 2005) (emphasis added).
The crux of the matter is this prerequisite "approval" of the city council and quorum court. It is of course well-established that the first rule of statutory construction is to interpret a statute just as it reads, giving words their ordinary and usual meaning in common usage. Roy v. Farmers Merchants Ins. Co.,307 Ark. 213, 819 S.W.2d 2 (1991). This principle prompts the initial observation that the term "approval" in ordinary usage implies the exercise of discretion. As defined by Black's LawDictionary (5th ed. 1979), "approval" means:
 The act of confirming, ratifying, assenting, sanctioning, or consenting to some act or thing done by another. "Approval" implies knowledge and exercise of discretion after knowledge. McCarten v. Sanderson, 111 Mont. 407, 109 P.2d 1108, 1112.
Id. at 94.
The court in McCarten, cited in Black's, supra, further observed the following regarding the word "approval:"
 "Approval" is the opposite of "disapproval;" it necessarily involves discretionary power, which ordinarily is complete unless limited in some way. . . . According to Webster's New International Dictionary (Merriam-Webster 2d ed.), "approval" means "approbation," "sanction," "endorsement," "support." "Approval of the application" is not ordinarily limited in meaning to a mere verification of the facts stated in the application. "Approval" implies knowledge and the exercise of discretion after knowledge (State v. Duckett, 133 S.C. 85, 130
S.E. 340), the exercise of judgment (Leroy v. Worchester St. R. Co., 287 Mass. 1, 191 N.E. 39), the act of passing judgment, the use of discretion, and the determination as a deduction therefrom (Melton v. Cherokee Oil Gas Co., 67 Okla. 247, 170 P. 691; In re State Bank, 84 Utah, 147, 30 P.2d 211), unless limited by the context of the statute. (Fuller v. Board of University and School Lands, 21 N.D. 212, 129 N.W. 1029.)
See also People v. Riggs, 87 P.3d 109 (Colo. 2004); OaheConservancy Subdistrict v. Janklow, 308 N.W.2d 559, 561 (S.D. 1981) (citing Gustafson v. Wethersfield Tp. High School Dist.
191, 49 N.E.2d 311, 313 (Ill.App.Ct. 1943)); Russ v. Woodard,232 N.C. 36, 59 S.E.2d 351 (1950).
In my opinion, the legislature's use of the word "approval" in A.C.A. § 24-8-307(i)(1), supra, evidences intent to vest the city and county governing bodies with the discretion to officially sanction or disapprove retirement benefits for a municipal judge who otherwise meets the necessary statutory requirements. This follows as an initial matter from the term "approval" itself. Additionally, when considering the subject matter and context of subsection 24-8-307, I find nothing imposing any limitation on the power of the city and county governing bodies to approve or disapprove under that subsection a municipal judge's eligibility for retirement benefits. To the contrary, a review of the other provisions of the subchapter confirms this discretionary power. I note for example the language of subsection 24-8-306, which provides in relevant part as follows:
 (a) A judge of a municipal court upon reaching age sixty-eight (68) and having served for a minimum of seven (7) years immediately prior to retirement may retire.
 * * *
 (c) Notice of retirement under any provision of this subchapter shall be in writing and sent to the chairman of the board of trustees who, upon finding that the applicant meets the requirements for retirement, shall authorize the secretary of the board to issue vouchers in payment to the applicant in accordance with the provisions of this subchapter for and during the natural life of the applicant.
A.C.A. § 24-8-306 (Repl. 2000).
The mandatory nature of this provision is clear — as long as the judge/applicant meets the necessary requirements, the retirement benefits must be provided. Subsection 24-8-306 is illustrative of other provisions of the subchapter that apply to judges and clerks who meet the stated age and service requirements. See,e.g., A.C.A. § 24-8-308(a)(1) (Repl. 2000) (a)(1) ("Any judge of a municipal court to which this subchapter applies who shall have served at least twenty (20) years in office as municipal judge, irrespective of age, shall be eligible to receive retirement benefits provided by this subchapter."); A.C.A. § 24-8-311(a)(1) (Supp. 2005) ("Any clerk of a municipal court . . . shall be eligible to receive retirement benefits provided by this subchapter who . . . [a]ttains age sixty (60) and has served in office as clerk for at least ten (10) years; or [h]as served in office for at least twenty (20) years irrespective of age."). Subchapter 4 of Chapter 8, Title 24 (applicable to municipal judges in a county with a population of 150,000), contains similar mandatory retirement provisions. See, e.g., A.C.A. §§24-8-405 — 407.
I find it significant that unlike A.C.A. § 24-8-307, these latter subchapters require no "approval" of one's eligibility for retirement benefits. Although we do not know the precise basis for the distinction, I note that each subsection requiring "approval" involves a younger age requirement, less service, a combination of service on the bench and other public service, or some combination of these factors. See A.C.A. §§ 24-8-307(a)(1) through (i)(1), — 309, and — 311(b). I also note the prospect of the use of city or county general funds to provide funding for these retirement benefits. See A.C.A. §§ 24-8-304 (Repl. 2000) (requiring the use of general funds of the city, and of the county if the county contributed to the judge's salary, to meet any deficiency in the municipal court judge and clerk retirement fund) and — 318 (Supp. 2005) (authorizing the city council and quorum court to contribute general funds if there is a need for additional funding to pay municipal court judges' and clerks' retirement benefits.)[3] The financial status of the former municipal court retirement fund was therefore of legitimate interest to the city and county and arguably one obvious reason why governing bodies were granted discretion to approve or deny benefits under subsection 24-8-307.
I therefore conclude with regard to your first question that the nature of the "approval" is indeed discretionary. Additionally, the legislature in my opinion has the power to delegate this approval authority to the political subdivisions. In considering whether or not the legislature might permissibly enact legislation of this sort, I am guided first by the principle that statutes are presumed constitutional, and the burden of proving otherwise falls upon the challenger of the statute. See Ford v.Keith, 338 Ark. 487, 996 S.W.2d 20 (1999); ACW, Inc. v. Weiss,329 Ark. 302, 947 S.W.2d 770 (1997). Additionally, the General Assembly has wide discretion to legislate within constitutional parameters. See Black v. Cockrill, 239 Ark. 367, 369,389 S.W.2d 881 (1965) (observing that our constitution "leaves to the legislature the absolute power to legislate unless prohibited from so doing by our constitution or unless the authority has been delegated to and exercised by our federal government."). This latter principle follows from the restrictive nature of the Arkansas Constitution. It is not a grant, but rather a limitation of powers. See Wells v. Purcell, 267 Ark. 456, 592 S.W.2d 100
1979); Jones v. Mears, 256 Ark. 825, 510 S.W.2d 857 (1974);Cockrill, supra. Finally, it is well-established in Arkansas that cities are "creatures of the State to aid it in the regulation and administration of local affairs." City of LittleRock v. Raines, 241 Ark. 1071, 411 S.W.2d 486 (1967). They act legally only within powers delegated by the Arkansas Constitution or statutes. Potocki v. City of Fort Smith, 279 Ark. 19,648 S.W.2d 462 (1983). Accordingly, the General Assembly is authorized, subject to constitutional restrictions, to prescribe cities' powers and functions.
I find no such constitutional restriction in this instance. Subsection 24-8-307 delegates to the city and county governing bodies the discretionary authority to determine whether it is the will of the political subdivision that the provisions of the retirement law be availed under certain circumstances. I perceive no constitutional impediment to this delegation. The statute does not presume to authorize an arbitrary exercise of discretion. To the contrary, as noted above, there are discernible reasons why the legislature would have granted the cities and counties the power to approve retirement benefits under this Code section.
Question 2 — Is this Judge eligible for benefits through theDistrict Judges Retirement plan based on the provisions ofArkansas Code Annotated § 24-8-307(h)(1) or (i)(1)?
"No," without the approval of the city and county governing bodies as discussed above. There may be a remaining question, however, whether that approval may still be provided as to this particular former municipal judge. The statute governing membership in ADJRS provides in relevant part as follows:
 Any former municipal judge who is eligible to receive a retirement benefit for service as municipal judge as provided by law before January 1, 2005, and any former municipal judge who is receiving a retirement benefit as provided by law for service as municipal judge shall participate on and after January 1, 2005, in the Arkansas District Judge Retirement System and have his or her benefits administered by this system.
A.C.A. § 24-8-807(c)(1) (Supp. 2005).
This statute sets the conditions for participation in ADJRS by former municipal judges. The question is whether this former judge "is eligible to receive a retirement benefit for service as municipal judge as provided by law before January 1, 2005." Id.
Because the "law before January 1, 2005," provided that there must be "approval" of his eligibility for benefits, it would appear that he is ineligible to participate in ADJRS. In this particular case, however, the inquiry may not end there. Specifically, I note the possibility that the necessary "approval" was not provided because the city and the county have not exercised their discretion under A.C.A. § 24-8-307 to approve his eligibility. Mr. Jones has stated that "[t]he governing bodies never acted upon the provisions of this statute [A.C.A. §24-8-307] regarding the Judicial Retirement." Letter from Carlton D. Jones, Deputy Prosecuting Attorney to Mike Beebe, Attorney General (July 5, 2006). This statement suggests that there was no vote one way or the other on the former judge's eligibility for benefits, further suggesting that his eligibility was neither approved nor disapproved before January 1, 2005. Assuming, as your correspondence indicates, that he in fact met all of the necessary conditions to be eligible for a retirement benefit, but the city and the county never actually exercised their discretionary authority prior to January 1, 2005 to decline his eligibility, the question arises, in my opinion, whether they are foreclosed at this point from taking up the matter.
Although some uncertainty surrounds this issue, I do not interpret the statutes governing membership in ADJRS to foreclose such action. I recognize in opining to this effect that the statutes contemplate that eligibility to participate in the new system will have been established by January 1, 2005, the date on which assets in the local retirement funds were to be transferred to ADJRS to cover "the actuarially determined accrued liability for those judges and former judges who are covered by the local fund on December 31, 2004." A.C.A. § 24-8-310(b). I also note, however, the explicit statement in A.C.A. § 24-8-812(a)(2) (Supp. 2005) that "[t]his subchapter is not intended to . . . increase the eligibility requirements for members who were participants in a local plan, as authorized by law, prior to January 1, 2005." Although the relevant "eligibility requirements" included "approval" by the city and county governing bodies, I find it significant that there was no deadline upon which a member of a local member had to gain such approval or otherwise be ineligible for benefits. Interpreting A.C.A. § 24-8-807(c)(1), supra, to impose such a deadline, by requiring city and county approval before January 1, 2005, of eligibility for someone who met all other prerequisites at that point, arguably increases the eligibility requirements to participate in ADJRS, contrary to A.C.A. § 24-8-812(a)(2), supra. Such an interpretation also seems counter to the general rule that retirement statutes should be interpreted liberally in favor of those to be benefited. Seegenerally Looper v. Gordon, 201 Ark. 841, 147 S.W.2d 24 (1941);Daley v. City of Little Rock, 319 Ark. 440, 892 S.W.2d 254
(1995); Scott v. Greer, 229 Ark. 1043, 320 S.W.2d 262 (1959).
In my opinion, it reasonably follows from the above observations that the city and the county may not be foreclosed from acting on this particular former municipal judge's eligibility for benefits. It should be emphasized that they retain discretion under A.C.A. § 24-8-307 to withhold their approval. But it must also be recognized that this discretion cannot be exercised arbitrarily. See, e.g., Op. Att'y Gen. 2006-095 (noting the prospect of an equal protection challenge if a city council acts in an arbitrary manner in deciding whether or not to extend retirement benefits to a recorder/treasurer). Accordingly, I caution against withholding approval based solely upon the absence of approval prior to January 1, 2005.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:EAW/cyh
[1] Subsection 24-8-307 is part of Arkansas Code Title 24, Chapter 8, subchapter 3, which established municipal court retirement plans in cities of the first and second class other than those located in certain counties with two districts and two county seats. See Ops. Att'y Gen. Nos. 1995-202 and 89-046; A.C.A. § 24-8-315 (Repl. 2000).
[2] I note regarding subsection 24-8-307(h)(1) that this provision includes a requirement of at least four years of public service "as a state trooper, as deputy prosecuting attorney, and with active duty in the military. . . ." It appears from the information you have provided that the individual in question has not met this requirement. The facts recited in your correspondence indicate instead that the applicable subsection for this individual is subsection 24-8-307(i)(1), which requires, along with the judicial service, at least six years as prosecuting attorney or deputy prosecuting attorney and two years with a state agency. A.C.A. § 24-8-307(i)(1) (Supp. 2005). Accordingly, I will assume for purposes of this opinion that A.C.A. § 24-8-307(i)(1) is the applicable "law" at the center of your question.
[3] The funds referenced in A.C.A. § 24-8-304 were closed effective December 31, 2004, pursuant to Act 1374 of 2003, which established the Arkansas District Judge Retirement System (ADJRS). See A.C.A. § 24-8-321 (Supp. 2005). The 2003 legislation closed the local municipal judges and clerks retirement systems and, as discussed further herein in response to your second question, enacted related provisions concerning the participation and retirement of district and former municipal judges under the new system. The retirement benefits of former municipal judges are now administered by ADJRS. A.C.A. § 24-8-807(c) (Supp. 2005). All fund assets necessary to pay the actuarially determined accrued liabilities were required to be transferred to ADJRS on January 1, 2005. Id. at -810(a) and (b). Those assets consisted of certain court costs and revenues from other optional sources, including city general funds. See
A.C.A. §§ 24-8-317 (Repl. 2000) and — 318 (Supp. 2005); Ops. Att'y Gen. Nos. 2005-125 and 2000-155. If a municipality has undercapitalized the local retirement fund and has insufficient funds to meet its obligation to ADJRS, the obligation may be amortized over a period of time not to exceed thirty years. A.C.A. § 24-8-810(c) (Supp. 2005).