Mr. Mark Lowery
229 Summit Valley Circle Maumelle, Arkansas 72113
Dear Mr. Lowery:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of the popular name and ballot title for a proposed constitutional amendment. Your popular name and ballot title are as follows:
 Popular Name THE PROTECTION OF LIFE INSURANCE PROCEEDS AMENDMENT
 Ballot Title AN AMENDMENT TO THE ARKANSAS CONSTITUTION WHOLLY EXEMPTING FROM CREDITOR CLAIMS AND TAXATION ALL BENEFITS AND PROCEEDS FROM A LIFE INSURANCE POLICY
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition. Neither certification nor rejection of a popular nameand ballot title reflects my view of the merits of the proposal.This Office has been given no authority to consider the merits ofany measure. *Page 2 
In this regard, A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. In addition, following Arkansas Supreme Court precedent, this office will not address the constitutionality of proposed measures in the context of a ballot title review unless the measure is "clearly contrary to law." Kurrus v. Priest, 342 Ark. 434,29 S.W.3d, 669 (2000); Donovan v. Priest, 326 Ark. 353,931 S.W.2d 119 (1996); and Plugge v. McCuen, 310 Ark. 654,841 S.W.2d 139 (1992). Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure thatthe popular name and ballot title honestly, intelligibly, and fairlyset forth the purpose of the proposed amendment or act. See ArkansasWomen's Political Caucus v. Riviere, 283 Ark. 463, 466,677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device.Pafford v. Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v.Bryant, 259 Ark. 294, 532 S.W.2d 741 (1976); Moore v.Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417,316 S.W.2d 185 (1958); Becker v. Riviere, 270 Ark. 219, 223,226, 604 S.W.2d 555 (1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed."Bailey v. McCuen, 318 Ark. 277, 285, 884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34 (1990);Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988);Hoban v. Hall, supra; and Walton v. McDonald,192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see
A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five minute limit in voting *Page 3 
booths when other voters are waiting in line. Bailey v.McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic Action Committee v.McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482,798 S.W.2d 71 (1990), citing Leigh v. Hall, 232 Ark. 558,339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed popular name and ballot title due to ambiguities in the text of your proposed measure. A number of additions or changes to your popular name and ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore presently unable to substitute and certify a more suitable and correct popular name and ballot title pursuant to A.C.A. § 7-9-107(b).
I refer to the following ambiguities:
 1. Although your proposed ballot title identifies your measure as a proposed constitutional amendment, the text of your measure at no point indicates as much. This lapse is confusing. Additionally, pursuant to A.C.A. § 7-9-107(a) and -104 (Repl. 2007), the "original draft" of the petition must be submitted to my office in the specified form. It is clearly stated in the latter provision that the petition must identify the measure as either "an amendment to the Constitution of the State or law or ordinance. . . ." Your submission fails to satisfy this requirement.
 2. Section 1 of your proposed amendment, captioned "Exemption of benefits and proceeds from a life insurance policy," is confusing in that the text of this section sets forth no exemption of any sort. Rather, it simply defines the terms "moneys" and "taxation" as used later in your measure. *Page 4 
 3. In order to clarify the effects of your proposed measure, thereby avoiding voter confusion, you need to clarify in both the measure and in your ballot title the effects adoption of your proposal would have on existing law. The ensuing discussion will focus on the interplay of three provisions: Ark. Const. article 9, § 2; A.C.A. § 16-66-209 (Supp. 2009), as amended by Acts 2009, No. 469; and your proposed amendment itself. Both the text of your proposed amendment and your proposed ballot title leave unclear what effects your measure might have on the above referenced constitutional provision, which sets limitations on creditors' contract claims, including contracts of life insurance, or the above referenced statutory provision, which restricts creditors' claims against various types of insurance benefits, including those associated with life insurance.
 Article 9, § 2 provides as follows:
 The personal property of any resident of this State, who is married or the head of a family, in specific articles to be selected by such resident, not exceeding in value the sum of five hundred dollars, in addition to his or her wearing apparel, and that of his or her family, shall be exempt from seizure on attachment, or sale on execution or other process from any court, on debt by contract.
 Section 16-66-209 of the Code further provides as follows:
 (a) To the extent permitted by the Arkansas Constitution, all moneys paid or payable to any resident of this state under an insurance policy providing for the payment of life, sick, accident, or disability benefits shall be exempt from liability or seizure under judicial process of any court and shall not be subjected to the payment of any debt by contract or otherwise by any writ, order, judgment, or decree of any court.
 (b) As used in this section, "moneys" means a payment made under an insurance policy to compensate: *Page 5 
 (1) The insured or beneficiary for a claim under the policy; or
 (2) The owner, insured, or beneficiary for the cash surrender value of the policy.
 (c) Nothing in this section shall be construed to affect the validity of any sale, assignment, mortgage, pledge, or hypothecation of a policy of insurance or the avails, proceeds, or benefits of a policy of insurance.
 Section 2 of your proposed amendment provides as follows:
 All moneys paid or payable to any resident of this state under an insurance policy or policies providing for the payment of life insurance benefits shall be exempt from liability or seizure under judicial process of any court and shall not be subjected to the payment of any debt by contract or otherwise by and writ, order, judgment, or decree of any court.
 Section 3 of your proposed amendment further provides that "[a]ll above described moneys are also exempt from taxation."
 The language of your proposed amendment differs from current A.C.A. § 16-66-209(a) (Supp. 2009) primarily in three significant respects. First, the statutory subsection just referenced exempts from judicial "liability or seizure" not only life insurance benefits, but also "sick, accident, or disability benefits." Secondly, unlike your proposed amendment, the statute contains no provision expressly exempting the benefits to which it applies from taxation; rather, the statute exempts claims based upon "any debt by contract or otherwise" (emphasis added) — a coinage that might or might not be construed as including a claim for taxes on the benefits themselves. Thirdly, unlike your proposed amendment, subsection (a) of the current statute qualifies the exemptions it sets forth by providing that they will apply only "[t]o the extent permitted by the Arkansas Constitution" — an indirect acknowledgment of the fact that Ark. Const. art. 9, § 2 *Page 6 
currently exempts from court process only personal property up to a value of $500, and only then when the claim sounds in contract.[1]
 Your proposed amendment might be read as narrowing the law in that it would provide an exclusive, unrestricted exemption against any type of claim only for life insurance benefits realized by an Arkansas resident, leaving it unclear what would remain either of the general $500 exemption extended by Article 9, § 2 to an Arkansas resident's personalty in an action based upon contract, or of the unrestricted exemption against claims of any sort extended by A.C.A. § 26-66-209(a) to "life, sick, accident, or disability benefits" realized by an Arkansas resident.
 In considering the relationship between existing law and your proposed measure, which you characterize as changing existing law, I must draw your attention to the principle of construction set forth in Gazaway v. Greene County Equalization Bd., 314 Ark. 569, 575, 864 S.W.2d 233 (1993): "The phrase expressio unius est exclusio alterius is a fundamental principle of statutory construction that the express designation of one thing may properly be construed to mean the exclusion of another." Chem-Ash, Inc. v. Arkansas Power Light Co., 296 Ark. 83, 751 S.W.2d 353 (1988); Venhaus v. Hale, 281 Ark. 390, 663 S.W.2d 930 (1946). This principle might be read as dictating that the only exemption relating to insurance proceeds following the adoption of your proposed constitutional amendment would apply to life insurance proceeds. It is well-established, however, that the Arkansas Constitution is not a grant of power, but rather a limitation thereon. Black v. Cockrill, 239 Ark. 367, 389 S.W.2d 881 (1965). The legislature has the absolute power to legislate, unless prohibited from doing so by the constitution, either expressly or by necessary implication. Id. Although the Arkansas Supreme Court has expressed its general commitment to the doctrine of expressio unius, the General Assembly's broad power to enact legislation mandates that this maxim of construction not be applied with the same rigor in construing possible constitutional restrictions upon legislative discretion as it might be in connection with a statute's possible restrictions on conduct not expressly foreclosed by the legislature. Within the context of a constitutional *Page 7 
amendment, "`only those things expressed in such positive affirmative terms as plainly imply the negative of what is not mentioned will be considered as inhibiting the powers of the legislature.'" Stanley v. Gates, 179 Ark. 886, 892, 19 S.W. 2d 100 (1929), quoting State v. Martin, 60 Ark. 343 (1895).
 It is consequently unclear what effect, if any, your proposed amendment might have on the current constitutional and statutory exemptions referenced above. Stated differently, I cannot determine whether your proposed amendment is intended to repeal by necessary implication any constitutional provision or legislation currently extending an exemption to the proceeds of insurance coverage other than life insurance. Is your proposed amendment intended merely to broaden the current scope of the exemption with respect to life insurance benefits, or is it intended to supersede the current constitutional and statutory provisions set forth above? Without clarification of these issues by some express declaration of how your proposal would change existing law, I am unable to summarize your proposed measure in a ballot title.
 It may be that, at least within the exclusive context of life insurance proceeds, your proposed amendment would repeal by implication the $500 cap on any exemption set forth in Article 9, § 2 of the Arkansas Constitution. See Federal Savings and Loan Insurance Co. v. Holt, 894 F.2d 1005 (8th Cir. 1990); In re Williams, 93 Bankr. 181
(Bankr. E.D. Ark. 1988); In re. Hudspeth, 92 Bankr. 827 (Bankr. W.D. Ark. 1988) (all declaring unconstitutional a previous version of A.C.A. § 16-66-209 that ignored in its grant of an exemption the $500 cap on exemptions set forth in Article 9, § 2); compare W.B. Worthen Co. v. Thomas, 292 U.S. 426, 431-34 (1934) (without reference to Article 9, 2, upholding the constitutionality of former A.C.A. § 16-66-209 under the federal contract clause with respect to a creditor's claims against life insurance proceeds so long as the statute was not applied retroactively). However, as explained above, this conclusion does not clearly follow from the proposed text of your measure. Assuming your proposed amendment's repeal of the $500 cap set forth in Article 9, § 2 would extend only to life insurance proceeds, presumably leaving the cap in effect as to the other types of insurance itemized in A.C.A. § 16-66-209, this provision might well be characterized as an "essential fact which would give the voter serious ground for reflection," *Page 8 Bailey [v. McCuen, 318 Ark. 277, 285, 884 S.W.2d 938 (1994], supra. Without clarification of this matter, I am unable to perform my statutory duty in certifying a popular name and ballot title for your proposal. Both the fact of the repeal of the Article 9, § 2 cap, which would clearly broaden the scope of the exemption available to life insurance proceeds, and the fact that the repeal would not apply to the other varieties of insurance set forth in A.C.A. § 16-66-209(a) should be clarified in order to properly reflect the scope of your proposed amendment in the ballot title.
 Your proposed amendment might further be characterized as broadening existing law in that it would afford recipients of life insurance proceeds a credit against taxes on benefits unavailable to the recipients of other types of insurance benefits. Current law might, although it does not necessarily, provide for a limited exemption against tax claims for proceeds arising from various types of insurance. As regards this limitation, Article 9, § 2 affords a constitutional exemption solely against contract creditors' claims against personal property up to an amount of $500 when the debtor is an Arkansas resident who is either married or the head of a household. However, as noted above, subject to any applicable constitutional restrictions, A.C.A. § 16-66-209(a) as amended provides for an exemption for Arkansas residents that applies not only to claims sounding in contract but also to claims "otherwise" incurred — a category that might be read as including tax claims.
 As noted above, the interplay among Article 9, § 2, A.C.A. § 16-66-209(a) and your proposed amendment is frankly unclear. Among the questions raised are the following: Might the somewhat amorphous statutory exemption against debts "otherwise" incurred be read as extending to tax claims? If so, how does Section 3 of your proposed amendment, which exempts only life insurance proceeds from taxation, change existing law? More generally, does the limited applicability of your proposed amendment to life insurance proceeds in any sense qualify the scope of the current constitutional and statutory exemptions relating to insurance proceeds other than those arising expressly from life insurance (i.e., does the principle of expressio unius restrict or abolish the limited exemption available to the proceeds of insurance other than life insurance)? Is there a tension between Article 9, § 2, which currently extends an exemption in all contract actions for all personalty only in an amount up to $500, and A.C.A. § 16-66-209(a), *Page 9 
which extends an unlimited exemption not only to claims sounding in contract but also to claims "otherwise" incurred? More generally, it is unclear how your proposed amendment would impact any exemptions — including, possibly, those applying to tax debts, currently available to types of insurance other than life insurance. In order to avoid confusing debates about the scope of the expressio unius concept, I believe both the text and the ballot title of your proposed measure should point out what changes your measure might effect on existing law. In the absence of such clarification, I cannot accurately summarize the effect of your proposed measure in a ballot title. Moreover, any clear disclosure of proposed changes to existing law might give a voter "serious ground for reflection," thereby mandating that these changes be disclosed. See Bailey, supra.
 4. Section 4 of your proposed amendment provides as follows:
 Nothing in this section shall be construed to affect the validity of any sale, assignment, mortgage, pledge, or hypothecation of any policy of insurance, or, if any, the avails, proceeds, or benefits thereof, shall in no way be affected by the provisions of this section of a policy of insurance.
 Up until the final comma of this passage, your proposed amendment tracks almost verbatim the relatively straightforward language of A.C.A. § 16-66-209(c) (Supp. 2009) as amended. However, the added final phrase beginning with "shall in no way" is syntactically disjointed, lacking any subject in the previous language to go with the verb "shall . . . be affected." It is further unclear what you mean in referring to "this section of a policy of insurance." What section and what policy? Without clarification, I am unable to summarize your proposed measure in a ballot title.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107 and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal. *Page 10 
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law.See, e.g., Finn v. McCuen, 303 Ark. 418,793 S.W.2d 34 (1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v.Priest, 341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id. Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed popular name and ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure, popular name and ballot title. See A.C.A. § 7-9-107(c). You may, after clarification of the matter discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted popular name and ballot title may be necessary. I will perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
DUSTIN McDANIEL Attorney General
DM/cyh Enclosure
[1] The statutory reference to the Arkansas Constitution as possibly restricting the scope of the exemption was included pursuant to Act 469 of 2009.
 *Page 1